ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
          – and –
PAUL J. GELLER
STUART A. DAVIDSON
JASON H. ALPERSTEIN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com
jalperstein@rgrdlaw.com

LABATON SUCHAROW LLP
JOEL H. BERNSTEIN
CORBAN S. RHODES
ROSS M. KAMHI
140 Broadway, 34th Floor
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
jbernstein@labaton.com
crhodes@labaton.com
rkamhi@labaton.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| KIM HOWARD, HASHMATULLAH ESSAR, RAYMOND COLLIER, MADONNA COTE, HELEN CIANGIULLI, and LOLITA MORRIS, Individually and on Behalf of All Others Similarly Situated,<br><br>                 Plaintiffs,<br><br>   vs.<br><br>YAHOO! INC.,<br><br>                Defendant. | Case No.<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR GROSS NEGLIGENCE; BAILMENT; BREACH OF IMPLIED CONTRACT; BREACH OF EXPRESS CONTRACT; VIOLATION OF COLORADO CONSUMER PROTECTION ACT (COL. REV. STAT. §6-1-101, *et seq.*); VIOLATION OF MARYLAND CONSUMER PROTECTION ACT (MD. CODE COM. LAW §13-101, *et seq.*); VIOLATIONS OF TEXAS DECEPTIVE TRADE PRACTICES ACT – CONSUMER PROTECTION ACT (TEX. BUS. & COM. CODE §17.41, *et seq.*); VIOLATION CALIFORNIA'S UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §17200, *et seq.*); VIOLATION OF CALIFORNIA'S CUSTOMER RECORDS ACT (CAL. CIV. CODE §1798.80, *et seq.*); VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT (N.J. STAT. ANN. §56:8-1, *et seq.*); AND DECLARATORY RELIEF<br><br>DEMAND FOR JURY TRIAL |

1  Plaintiffs Kim Howard, Hashmatullah Essar, Raymond Collier, Madonna Cote, Helen

2  Ciangiulli, and Lolita Morris ("Plaintiffs"), individually and on behalf of all others similarly situated,

3  by their undersigned attorneys, bring this class action complaint against defendant Yahoo! Inc.

4  ("Yahoo," the "Company," or "Defendant") based on personal knowledge as to themselves and upon

5  information and belief as to all other matters based on the investigation of counsel.

6  **NATURE OF THE ACTION**

7  1.  Defendant Yahoo is a leading Internet company that provides Internet-based services

8  to hundreds of millions of users on a regular and consistent basis. As part of its business, Yahoo

9  collects and stores large volumes of sensitive personal information about its users, including the

10  users' names, email addresses, telephone numbers, birth dates, passwords, and security questions

11  linked to a users' account. Yahoo requires all of this information in order to create an account.

12  2.  Despite the fact that it requires, collects and stores sensitive personal information for

13  hundreds of millions of users, the Company has failed to adequately protect its users or itself from

14  data breaches. Indeed, Yahoo's security systems have been breached in the past, and the Company

15  has demonstrated that it cannot adequately secure the personal information of its users.

16  3.  Despite Yahoo's promises to "take[] your privacy seriously," to "limit access to

17  personal information about you to employees who we believe reasonably need to come into contact

18  with that information to provide products or services to you or in order to do their jobs," and to

19  "have physical, electronic, and procedural safeguards that comply with federal regulations to protect

20  personal information about you," Yahoo failed to live up to those promises when it failed to

21  adequately protect is users' personal information.

22  4.  Specifically, on September 22, 2016, Yahoo issued a press release in which it

23  announced that a "recent investigation" confirmed that sensitive personal account information

24  associated with at least ***500 million user accounts*** "was stolen from the company's network in late

25  2014 by what it believes is a state-sponsored actor."  The stolen information included users' names,

26  email addresses, telephone numbers, dates of birth, hashed passwords and, in some cases, encrypted

27  or unencrypted security questions and answers. Reports indicate that ***this data breach was the***

28  ***largest from a single site in history***.

COMPLAINT FOR GROSS NEGLIGENCE, BAILMENT, STATE CONSUMER PROTECTION AND
DATA BREACH LAWS, AND DECLARATORY RELIEF                                                  - 1 -

5.      As a result of Defendants' failure to establish and implement basic data security protocols, contrary to Yahoo's guarantees, its users' personal information is now in the hands of criminals and/or enemies of the Unites States, subjecting Plaintiffs and the Class (as defined below) to the serious risk of identity theft in a wide variety of forms.

6.      Worse yet, despite the fact that the attack took place in late 2014, Yahoo was so grossly negligent in securing its users' personal information that it says that it did not even discover the incident until the summer of 2016.  In other words, Defendant's misconduct was so bad that it evidently allowed unauthorized and malicious access to Plaintiffs' and the Class members' personal information on Defendant's computer systems to continue unimpeded for **nearly two years**.

7.      Circumstantial evidence suggests that certain Yahoo insiders **did** know of the breach long before it was disclosed, but hid it from the public until after a $4.8 billion sale of the Company to Verizon was announced in July 2016.  Verizon has stated that it did not learn of the breach until September 20, 2016, and commentators have noted that "Verizon might want to lower the price it is paying because it wasn't notified of the hack sooner and doesn't yet know the full liability Yahoo and Verizon would face from victims of the hack."  Now countless media outlets report that Yahoo CEO Marissa Mayer knew about the breach in July 2016, before telling Verizon that the Company had not been the subject of a breach.

8.      Plaintiffs and Class members must now take matters into their own hands to protect themselves from fraud. Indeed, although the Company has stated that the "ongoing investigation" suggests that the stolen information did not include payment card data or bank account information,[1] Yahoo has nevertheless encouraged its users to consider placing a "security freeze" (also known as a "credit freeze") on their credit file. A security freeze is designed to prevent potential creditors from accessing an individual's credit file at the consumer reporting agencies without the individual's consent, and, according to Yahoo's notice to its users, costs roughly between $5 and $20 per freeze. Yahoo has offered no financial assistance to its users.

---

[1]    Plaintiff does not state this as a definitive fact.

COMPLAINT FOR GROSS NEGLIGENCE, BAILMENT, STATE CONSUMER PROTECTION AND
DATA BREACH LAWS, AND DECLARATORY RELIEF                                                - 2

1      9.     In addition, countless Yahoo users are reporting that Yahoo or its authorized

2  technicians are demanding payment of several hundred dollars for 1-3 years of "security protection"

3  in order to access their hacked, blocked accounts.

4      10.    Plaintiffs bring this class action lawsuit against Yahoo for failing to adequately

5  safeguard their and others' personal information. Plaintiffs seek judgment requiring Yahoo to

6  remedy the harm caused by its misconduct, which includes compensating Plaintiffs and Class

7  members for resulting account fraud and for all reasonably necessary measures Plaintiffs and Class

8  members have had to take in order to identify and safeguard the accounts put at risk by Yahoo's

9  grossly negligent security.  Plaintiffs further seek a declaratory judgment declaring unenforceable the

10  limitation of liability clause in Yahoo's Terms of Service.

11                        **INTRADISTRICT ASSIGNMENT**

12      11.    A substantial part of the events or conduct that give rise to the claims in this action

13  occurred in the county of Santa Clara, and as such this action is properly assigned to the San Jose

14  Division of this Court.

15                               **PARTIES**

16      12.    Plaintiff Kim Howard ("Howard") is a natural person and a resident and citizen of El

17  Paso, Texas.  Ms. Howard is one of the approximately 500 million Yahoo users whose personal

18  information was stolen because Yahoo was reckless in failing to secure such information.  Ms.

19  Howard has already expended hundreds of dollars to secure her personal information as a direct

20  result of the data breach, and suffers from extreme anxiety due specifically to Yahoo's misconduct.

21      13.    Plaintiff Hashmatullah Essar ("Essar") is a natural person and a resident and citizen of

22  Thornton, Colorado.  Mr. Essar is also one of the approximately 500 million Yahoo users whose

23  personal information was stolen because Yahoo was reckless in failing to secure such information.

24  Mr. Essar is forced to pay for identity theft protection as a direct result of the data breach, laying out

25  $35.98 per month for LifeLock beginning on September 28, 2016.  He also suffers from extreme

26  anxiety as a direct result of Yahoo's misconduct knowing that his family's (including children) birth

27  certificates, dates of birth, social security numbers, employment history, healthcare documents, and

28  account numbers were all stolen from Yahoo's network by criminal hackers.

COMPLAINT FOR GROSS NEGLIGENCE, BAILMENT, STATE CONSUMER PROTECTION AND
DATA BREACH LAWS, AND DECLARATORY RELIEF         - 3 -

14.     Plaintiff Raymond Collier ("Collier") is a natural person and a resident and citizen of San Antonio, Texas.  Mr. Collier is one of the approximately 500 million Yahoo users whose personal information was stolen because Yahoo was reckless in failing to secure such information.

15.     Plaintiff Madonna Cote ("Cote") is a natural person and a resident and citizen of Sonora, California.  Ms. Cote is one of the approximately 500 million Yahoo users whose personal information was stolen because Yahoo was reckless in failing to secure such information.

16.     Plaintiff Helen Ciangiulli ("Ciangiulli") is a natural person and a resident and citizen of New Jersey.  Ms. Ciangiulli is one of the approximately 500 million Yahoo users whose personal information was stolen because Yahoo was reckless in failing to secure such information.  Ms. Ciangiulli expects to now have to pay to place a security freezer on her credit file as a direct result of the data breach, and suffers from anxiety due specifically to Yahoo's misconduct.

17.     Plaintiff Lolita Morris ("Morris") is a natural person and a resident and citizen of Annapolis, Maryland.  Ms. Morris is one of the approximately 500 million Yahoo users whose personal information was stolen because Yahoo was reckless in failing to secure such information.

18.     Defendant Yahoo is a Delaware corporation headquartered at 701 First Avenue, Sunnyvale, California 94089.  Yahoo is a citizen of California.  Yahoo does business throughout the State of California and the United States.  Yahoo maintains a substantial portion of its computer systems in California.

## JURISDICTION AND VENUE

19.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA"), because (i) the proposed Class consists of well over 100 members; (ii) the parties are minimally diverse, as members of the proposed Class are citizens of a state different from Defendant's home state; and (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs.

20.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction.  This Court has personal jurisdiction over Yahoo because it maintains its principal headquarters in California, regularly conducts business in California, and has sufficient minimum contacts in California. In addition, Plaintiffs' claims arise out of Defendant's conducting

COMPLAINT FOR GROSS NEGLIGENCE, BAILMENT, STATE CONSUMER PROTECTION AND
DATA BREACH LAWS, AND DECLARATORY RELIEF                                                                    - 4 -

1  and transacting business in California, and many of the actions giving rise to the Complaint took

2  place in this District.

3      21.    Venue is proper in this District pursuant to 28 U.S.C. §1391 because Yahoo is a

4  resident of this District and is subject to this Court's personal jurisdiction.  Yahoo is registered to

5  conduct business throughout California, regularly conducts business in this District, and maintains

6  an office in this District.  In addition, the causes of action arose, in substantial part, in this District.

7                                    **FACTUAL ALLEGATIONS**

8  **Company Background**

9      22.    Yahoo is a Delaware corporation that operates a host of Internet websites and

10 services, including web portal, search engine and e-mail service, among others.

11     23.    Yahoo's security systems have been breached before. In July 2012, a group of

12 hackers based in Eastern Europe breached Yahoo's security measures and extracted e-mail addresses

13 and passwords that were stored unencrypted within a Yahoo database. The hackers then posted these

14 login credentials online, in an effort to expose Yahoo's lax security measures.

15     24.    Yahoo guarantees its users that it will take certain specific steps to protect the

16 personal, private information Yahoo requires an individual provide the Company in order to create

17 an account.  Specifically, Yahoo promises on its website and in its Privacy Policy:

18     •    to "take[] your privacy seriously";

19     •    to "limit access to personal information about you to employees who we believe
20          reasonably need to come into contact with that information to provide products or
            services to you or in order to do their jobs"; and

21     •    to "have physical, electronic, and procedural safeguards that comply with federal
22          regulations to protect personal information about you."

23 **The Security Breach**

24     25.    According to Yahoo, it first learned of a potentially massive data breach at some point

25 during the summer of 2016, when hackers posted to underground online forums certain data that

26 they claimed was obtained from Yahoo. It was not clear whether the data came from Yahoo itself (as

27 opposed to a third-party service), and so Yahoo launched an investigation, but was unable to confirm

28 whether the stolen data had originated from a breach at Yahoo.

26.     Although the Company says that it did not find evidence that the stolen data came from its own systems, it did find evidence of a far more serious breach: according to Yahoo, in 2014, a state-sponsored actor stole account information associated with approximately 500 million Yahoo users.

27.     On September 22, 2016, Yahoo issued a press release announcing that its internal investigation had confirmed that account information associated with ***at least 500 million user accounts*** had been stolen. The press release stated, in part, as follows:

> A recent investigation by Yahoo! Inc. (NASDAQ:YHOO) has confirmed that a copy of certain user account information was stolen from the company's network in late 2014 by what it believes is a state-sponsored actor. The account information may have included names, email addresses, telephone numbers, dates of birth, hashed passwords (the vast majority with bcrypt) and, in some cases, encrypted or unencrypted security questions and answers. The ongoing investigation suggests that stolen information did not include unprotected passwords, payment card data, or bank account information; payment card data and bank account information are not stored in the system that the investigation has found to be affected. Based on the ongoing investigation, Yahoo believes that information associated with at least 500 million user accounts was stolen and the investigation has found no evidence that the state-sponsored actor is currently in Yahoo's network. Yahoo is working closely with law enforcement on this matter.
>
> Yahoo is notifying potentially affected users and has taken steps to secure their accounts. These steps include invalidating unencrypted security questions and answers so that they cannot be used to access an account and asking potentially affected users to change their passwords. Yahoo is also recommending that users who haven't changed their passwords since 2014 do so.
>
> Yahoo encourages users to review their online accounts for suspicious activity and to change their password and security questions and answers for any other accounts on which they use the same or similar information used for their Yahoo account. The company further recommends that users avoid clicking on links or downloading attachments from suspicious emails and that they be cautious of unsolicited communications that ask for personal information. Additionally, Yahoo asks users to consider using Yahoo Account Key, a simple authentication tool that eliminates the need to use a password altogether.
>
> Online intrusions and thefts by state-sponsored actors have become increasingly common across the technology industry. Yahoo and other companies have launched programs to detect and notify users when a company strongly suspects that a state-sponsored actor has Yahooed an account. Since the inception of Yahoo's program in December 2015, independent of the recent investigation, approximately 10,000 users have received such a notice.

28.     Numerous articles discussing the data breach immediately followed.  Indeed, *The New York Times* published an article that same day, titled "Yahoo Says Hackers Stole Data on 500

Million Users in 2014," which quoted security experts who explained that the Yahoo data breach could have major consequences:

> "The stolen Yahoo data is critical because it not only leads to a single system but to users' connections to their banks, social media profiles, other financial services and users' friends and family," said Alex Holden, the founder of Hold Security, which has been tracking the flow of stolen Yahoo credentials on the underground web. "This is one of the biggest breaches of people's privacy and very far-reaching."[2]

29.     Other reports indicate that this was the largest data breach from a single site in history.

30.     The consequences of the Yahoo data breach will be significant, and the breach demonstrates that the Company has, by acting with reckless disregard for the security of its users' personal information that it promised to protect, utterly failed to implement reasonable security measures to protect its users' sensitive personal information, despite the Company being the target of data breaches in the past. As a result of Defendant's reckless conduct and failure to establish and implement basic data security protocols, despite its knowledge and the warnings of prior data breaches, its users' personal information is now in the hands of criminals, subjecting Plaintiff and the Class to the serious risk of identity theft in a wide variety of forms.

31.     What is worse, despite the fact that the attack took place in late 2014, Yahoo was so reckless in securing its users' personal information that it says that it did not even discover the incident until the summer of 2016 – ***nearly two years after the attack***.  This is an unusually long time to identify a hacking incident. Indeed, according to the Ponemon Institute, which tracks data breaches, the average time it takes organizations to identify a data breach is 191 days, and the average time to contain a breach is 58 days after discovery.[3]

**Yahoo's Recommended Security Steps**

32.     In Yahoo's September 22, 2016 press release announcing the attack, the Company provided a link to a Yahoo Account Security Notice.

---

[2]     Nicole Perlroth, *Yahoo Says Hackers Stole Date on 500 Million Users in 2014*, N.Y. TIMES (Sept. 22, 2016).

[3]     *Id.*

33.     Also available after following the link provided in the press release was a page detailing Account Security Issues Frequently Asked Questions ("FAQs"). The FAQs provided additional background on the data breach and offered suggestions on how Yahoo users could secure their account.

34.     One recommendation was that users place a "security freeze" (also known as a "credit freeze") on their credit files. A security freeze is designed to prevent potential creditors from accessing an individual's credit file at the consumer reporting agencies without the individual's consent, and costs roughly between $5 and $20 per freeze. The Company provided instructions on how to implement a security freeze and provided additional details on what the security-freeze process entails, but offered no financial assistance.

35.     Plaintiffs have expended or will be required to expend substantial sums of money as a direct result of the data breach. Plaintiffs, and other Class members who do the same, should be compensated by Yahoo for their expenses in light of Yahoo's failure to adequately secure its users' personal information.

## PLAINTIFFS' EXPERIENCES

36.     Plaintiff Howard has been a Yahoo user continually since approximately 2011-2012 and has been damaged as a result of the data breach that Yahoo announced on September 22, 2016.

37.     Plaintiff Howard's Yahoo account has been hacked by criminals, and she has a reasonably held belief that her identity has been compromised and is at an increased risk for credit and identity theft.  Concerned about the theft of her personal information, Plaintiff Howard has been forced to pay hundreds of dollars for computer security protection, and now suffers from anxiety as a result of knowing that criminal hackers now possess her personal, private information.

38.     Plaintiff Essar has been a Yahoo user continually for over 10 years and has been damaged as a result of the data breach that Yahoo announced on September 22, 2016.

39.     Plaintiff Essar's Yahoo account has been hacked by criminals, and he has a reasonably held belief that his identity has been compromised, and is at an increased risk for credit and identity theft.  Concerned about the theft of his personal information, Plaintiff Essar purchased

1   identity theft protection on September 28, 2016 from LifeLock for $35.98 per month, and suffers

2   from anxiety knowing that criminal hackers now possess his family's  (including children) birth

3   certificates, dates of birth, social security numbers, employment history, healthcare documents, and

4   account numbers.

5        40.     Plaintiff Collier has been a Yahoo user continually for over 10 years and has been

6   damaged as a result of the data breach that Yahoo announced on September 22, 2016.

7        41.     Plaintiff Collier's Yahoo account has been hacked by criminals, and he has a

8   reasonably held belief that his identity has been compromised, and is at an increased risk for credit

9   and identity theft.  Plaintiff Collier has been repeatedly been unable to access his Yahoo account due

10  to hacking, and suffers from anxiety knowing that criminal hackers now possess his personal

11  information.

12       42.     Plaintiff Cote has been a Yahoo user continually since approximately 2002 and has

13  been damaged as a result of the data breach that Yahoo announced on September 22, 2016.

14       43.     Plaintiff Cote's Yahoo account has been hacked by criminals, and she has a

15  reasonably held belief that her identity has been compromised, and suffers from anxiety knowing

16  that criminal hackers now possess her personal information and is at an increased risk for credit and

17  identity theft.

18       44.     Plaintiff Ciangiulli has been a Yahoo user since approximately 2004 and has been

19  damaged as a result of the data breach that Yahoo announced on September 22, 2016.

20       45.     Plaintiff Ciangiulli's Yahoo account has been hacked by criminals, and she has a

21  reasonably held belief that her identity has been compromised, and is at an increased risk for credit

22  and identity theft.  Concerned about the theft of her personal information, Plaintiff Ciangiulli is in

23  the process of paying to place a security freeze on her credit file.

24       46.     Plaintiff Morris has been a Yahoo user continually for over 10 years and has been

25  damaged as a result of the data breach that Yahoo announced on September 22, 2016.

26       47.     Plaintiff Morris' Yahoo account has been hacked by criminals, and she has a

27  reasonably held belief that her identity has been compromised, and suffers from anxiety knowing

28

COMPLAINT FOR GROSS NEGLIGENCE, BAILMENT, STATE CONSUMER PROTECTION AND
DATA BREACH LAWS, AND DECLARATORY RELIEF                                      - 9 -

1   that criminal hackers now possess her personal information and is at an increased risk for credit and

2   identity theft.

3                                    **CLASS ACTION ALLEGATIONS**

4          48.      Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 ("Rule 23")

5   on behalf of themselves and a class of other similarly situated individuals (the "Class"), as defined

6   specifically below:

7          **All persons within the United States whose personal information was accessed
           following the data breach that Yahoo announced in a press release on**
8          **September 22, 2016.**

9          49.      Plaintiffs also bring this action under the statutory and common laws of their

10  respective states of residence on behalf of themselves and classes of other similarly situated

11  individuals, as defined as:

12         **All persons within the state of Colorado whose personal information was
           accessed following the data breach that Yahoo announced in a press release on**
13         **September 22, 2016 (the "Colorado Class").**

14         **All persons within the state of Texas whose personal information was accessed
           following the data breach that Yahoo announced in a press release on**
15         **September 22, 2016 (the "Texas Class").**

16         **All persons within the state of Maryland whose personal information was
           accessed following the data breach that Yahoo announced in a press release on**
17         **September 22, 2016 (the "Maryland Class").**

18         **All persons within the state of California whose personal information was
           accessed following the data breach that Yahoo announced in a press release on**
19         **September 22, 2016 (the "California Class").**

20         **All persons within the state of New Jersey whose personal information was
           accessed following the data breach that Yahoo announced in a press release on**
21         **September 22, 2016 (the "New Jersey Class").**

22         50.      Excluded from the Class is Defendant; any person who is an officer, director, partner

23  or controlling person of Defendant, including any of its subsidiaries or affiliates; any entity in which

24  Defendant has a controlling interest; and the legal representatives, heirs, successors and assigns of

25  any such excluded person or entity.

26         51.      Plaintiffs satisfy the numerosity, commonality, typicality, and adequacy prerequisites

27  for suing as a representative party pursuant to Rule 23.

28

COMPLAINT FOR GROSS NEGLIGENCE, BAILMENT, STATE CONSUMER PROTECTION AND
DATA BREACH LAWS, AND DECLARATORY RELIEF                                                    - 10 -

52. **Numerosity**.  Yahoo has stated publicly that approximately 500 million of its users were affected by this data breach, and according to public records there were more than 80 million Yahoo users in the United States alone during 2014 when the breach occurred.  Joinder is therefore impracticable and the numerosity requirement of Rule 23 is easily satisfied here.

53. **Commonality**.  Plaintiffs' and Class members' claims raise predominately common factual and legal questions that can be answered for all Class members through a single class-wide proceeding. For example, to resolve any Class member's claims, it will be necessary to answer the following questions, and the answer to each of these questions will necessarily be the same for each Class member.

(a)     whether Defendant owed a duty of care to Plaintiffs and the Class with respect to the security of their personal information;

(b)     whether Defendant acted with reckless disregard for the safety and security of the personal information it promised to protect by failing to establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of records and to protect against known and anticipated threats or hazards to the security and integrity of these records;

(c)     whether the Defendant's conduct was reckless or intentional;

(d)     whether Defendant acted appropriately in securing Plaintiffs and Class members' personal information;

(e)     whether Defendant violated the consumer protection laws of Texas, Maryland, California, New Jersey, and/or Colorado;

(f)     whether Defendant violated California law by failing to timely disclose the data breach to California residents; and

(g)     whether Plaintiffs and Class members are entitled to damages, declaratory and/or injunctive relief.

54. **Typicality**.  Plaintiffs' claims are typical of the claims of the members of the Class. Among other things, Plaintiffs and Class members provided personal information that was stored on Defendant's systems because they are users of Yahoo's services. In addition, Plaintiffs' claims are

1  typical of Class members' claims as each arises from the same data breach and the same alleged

2  reckless conduct on the part of Yahoo in handling the Class members' personal information.

3       55.  **Adequacy**.  Plaintiffs will adequately represent the proposed Class members.  They

4  have retained counsel competent and experienced in class action and privacy litigation and intend to

5  pursue this action vigorously.  Plaintiffs have no interests contrary to or in conflict with the interests

6  of Class members.

7       56.  In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the

8  requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact

9  predominate over any questions affecting only individual members and a class action is superior to

10  individual litigation. Plaintiffs know of no difficulty to be encountered in the management of this

11  action that would preclude its maintenance as a class action.

12  **COUNT I**

13  **Gross Negligence**

14       57.  Plaintiffs incorporate the above allegations by reference.

15       58.  By maintaining their personal information in a database that was accessible through

16  the Internet, Yahoo owed Plaintiffs and Class members a duty of care to employ reasonable Internet

17  security measures to protect this information.

18       59.  Defendant, with reckless disregard for the safety and security of users' personal

19  information it was entrusted with, breached the duty of care owed to Plaintiffs and the Class by

20  failing to implement reasonable security measures to protect its users' sensitive personal

21  information. In failing to employ these basic and well-known Internet security measures, Yahoo

22  departed from the reasonable standard of care and violated its duty to protect Plaintiffs' and Class

23  members' personal information.  Defendant further breached its duty of care by allowing the breach

24  to continue undetected and unimpeded for nearly two years after the hackers first gained access to

25  Defendant's systems.

26       60.  The unauthorized access to Plaintiffs' and Class members' personal information was

27  reasonably foreseeable to Yahoo, particularly considering that the method of access is widely known

28

COMPLAINT FOR GROSS NEGLIGENCE, BAILMENT, STATE CONSUMER PROTECTION AND
DATA BREACH LAWS, AND DECLARATORY RELIEF      - 12

1  in the computer and data security industry, and that it has long been standard practice in the Internet

2  technology sector to encrypt personal information, including critical login credentials.

3      61.    Neither Plaintiffs nor other Class members contributed to the security breach or

4  Yahoo's employment of insufficient security measures to safeguard personal information.

5      62.    As a direct and proximate cause of Yahoo's reckless conduct, Plaintiffs and Class

6  members suffered injury through the public disclosure of their personal information, the

7  unauthorized access to Internet accounts containing additional personal information, and through the

8  heightened risk of unauthorized persons stealing additional personal information. Plaintiffs and Class

9  members have also incurred the cost of taking measures to identify and safeguard accounts put at

10 risk by disclosure of the personal information stolen from Yahoo, including placing a security freeze

11 on their credit file.

**COUNT II**

**Bailment**

12

13

14     63.    Plaintiffs incorporate the above allegations by reference.

15     64.    Plaintiffs and members of the Class delivered their personal information to Yahoo for

16 the exclusive purpose of creating a Yahoo account.

17     65.    In delivering their personal and financial information to Yahoo, Plaintiffs and Class

18 members intended and understood that Yahoo would adequately safeguard their personal

19 information.

20     66.    Yahoo accepted possession of Plaintiffs' and Class members' personal information

21 for the purpose of creating a Yahoo user account.

22     67.    By accepting possession of Plaintiffs' and Class members' personal information,

23 Yahoo understood that Plaintiffs and Class members expected Yahoo to adequately safeguard their

24 personal information. Accordingly, a bailment (or deposit) was established for the mutual benefit of

25 the parties.

26     68.    During the bailment (or deposit), Yahoo owed a duty to Plaintiffs and Class members

27 to exercise reasonable care, diligence and prudence in protecting their personal information.

28

69.     Yahoo breached its duty of care by failing to take appropriate measures to safeguard and protect Plaintiffs' and Class members' personal information, resulting in the unlawful and unauthorized access to and misuse of their personal information.

70.     Yahoo further breached its duty to safeguard Plaintiffs' and Class members' personal information by failing to timely and accurately notify them that their information had been compromised as a result of the Yahoo data breach.

71.     As a direct and proximate result of Yahoo's breach of its duty, Plaintiffs and Class members suffered consequential damages that were reasonably foreseeable to Yahoo, including but not limited to the damages set forth herein.

72.     As a direct and proximate result of Yahoo's breach of its duty, the personal information of Plaintiffs and Class members entrusted to Yahoo during the bailment (or deposit) was damaged and its value diminished.

## COUNT III

### Breach of Implied Contract

73.     Plaintiffs incorporate the above allegations by reference.

74.     When Plaintiffs and members of the Class provided their personal information to Yahoo in order to create an account, Plaintiffs and members of the Class entered into implied contracts with Yahoo pursuant to which Yahoo agreed to safeguard and protect such information and to timely and accurately notify Plaintiffs and Class members that their data had been breached and compromised.

75.     Yahoo solicited and invited Plaintiffs and members of the Class to create an account with Yahoo and required the provision of very personal, private information in order to do so. Plaintiffs and members of the Class accepted Yahoo's offer and obtained accounts that were active and in-use during the period of the Yahoo data breach.

76.     The provision of personal information to Yahoo by Plaintiffs and members of the Class was made pursuant to the mutually agreed upon implied contract with Yahoo under which Yahoo agreed to safeguard and protect Plaintiffs' and Class members' personal information, and to timely and accurately notify them that such information was compromised and breached.

77.     Plaintiffs and Class members would not have provided and entrusted their personal information to Yahoo in order to open a Yahoo account in the absence of the implied contract between them and Yahoo.

78.     Plaintiffs and members of the Class fully performed their obligations under the implied contract with Yahoo.

79.     Yahoo breached the implied contracts it made with Plaintiffs and Class members by failing to safeguard and protect the personal information of Plaintiffs and members of the Class and by failing to provide timely and accurate notice to them that their personal information was compromised in and as a result of the Yahoo data breach.

80.     The losses and damages sustained by Plaintiffs and Class members as described above were the direct and approximate result of Yahoo's breaches of the implied contracts between Yahoo and Plaintiffs and members of the Class.

**COUNT IV**

**Breach of Express Contract**

81.     Plaintiffs incorporate the above allegations by reference.

82.     Yahoo offered services to consumers pursuant to a Privacy Policy.

83.     Plaintiffs and the Class are subject to an agreement with Yahoo called the Terms of Service. Yahoo incorporates its Privacy Policy into the terms of the Terms of Service. As a condition of opening a Yahoo account, Plaintiffs and the Class are subject to the terms of the Terms of Service and the Privacy Policy incorporated therein.

84.     The Terms of Service provides: "Registration Data and certain other information about you are subject to our applicable privacy policy."

85.     The Privacy Policy states that Yahoo will:

- "limit access to personal information about you to employees who we believe reasonably need to come into contact with that information to provide products or services to you or in order to do their jobs"; and

- "have physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about you."

86.     Plaintiffs and the Class were made subject to the uniform, common terms of the above agreements and documents.

87.     Plaintiffs and members of the Class fully performed their obligations under the above agreements and documents.

88.     Yahoo breached the Terms of Service and Privacy Policy. Contrary to the terms of the agreements, and by engaging in the conduct set forth in this Complaint, Yahoo did not protect its customers' personal information from unauthorized access and use and Yahoo did not use measures, including computer safeguards and secured files and buildings, to protect Plaintiffs' and Class members' personal information from unauthorized access and use.

89.     Plaintiffs and the Class had active Yahoo accounts during the period of the Yahoo data breach. Their Yahoo accounts were compromised in and as a result of the Yahoo data breach. Plaintiffs and members of the Class suffered damages and losses as described herein.

90.     The damages and losses sustained by Plaintiffs and members of the Class are the direct and proximate result of Yahoo's breaches of the Terms of Service and Privacy Policy.

**COUNT V**

**Violation of Colorado Consumer Protection Act**
**Colo. Rev. Stat. §6-1-101, *et seq.***

91.     Plaintiff Essar incorporates the above allegations by reference.

92.     Yahoo is a "person" under §6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Colo. Rev. Stat. §6-1-101, *et seq.*

93.     Plaintiff Essar and Colorado Class members are "consumers" for purposes of Colo. Rev. Stat §6-1-113(1)(a) who signed up for a Yahoo account.

94.     The Colorado CPA prohibits deceptive trade practices in the course of a person's business. Yahoo engaged in deceptive trade practices prohibited by the Colorado CPA, including: (1) knowingly making a false representation as to the characteristics, uses, and benefits of Yahoo accounts that had the capacity or tendency to deceive Colorado Class members; (2) representing that Yahoo's ability to adequately secure users' personal information were of a particular standard, quality, and grade even though Yahoo knew or should have known it was not; (3) advertising

1    Yahoo's privacy protections with the intent to induce consumers to register with Yahoo; and (4)

2    failing to disclose material information concerning the inadequate protections of personal

3    information that was known to Yahoo at the time of advertisement with the intent to induce

4    Colorado Class members to create an account with Yahoo.

5         95.     In the course of its business, Yahoo concealed and suppressed material facts

6    concerning the adequacy of Yahoo's ability to secure users' personal information.  Plaintiff Essar

7    and Colorado Class members had no way of discerning that Yahoo's representations were false and

8    misleading.  Plaintiff Essar and Colorado Class members did not and could not unravel Yahoo's

9    deception on their own.

10        96.     Yahoo thus violated the Colorado CPA by, at minimum: employing deception,

11    deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of

12    any material fact with intent that others rely upon such concealment, suppression or omission, in

13    connection with the creation of Yahoo accounts by consumers.

14        97.     Yahoo engaged in misleading, false, unfair or deceptive acts or practices that violated

15    the Colorado CPA by failing to disclose and actively concealing the inadequate security measures in

16    place to protect personal information provided to Yahoo by users.

17        98.     Yahoo's actions as set forth above occurred in the conduct of trade or commerce.

18        99.     Yahoo knew the true nature of its unsecure network when it was hacked several years

19    before 2014.

20       100.     Yahoo intentionally and knowingly misrepresented material facts regarding its ability

21    to adequately safeguard and secure users' personal information with intent to mislead Plaintiff Essar

22    and the Colorado Class.

23       101.     Yahoo knew or should have known that its conduct violated the Colorado CPA.

24       102.     Yahoo owed Plaintiff Essar a duty to disclose security risks of its network because it

25    possessed exclusive knowledge that its network was unsecure and vulnerable to outside hackers.

26       103.     Yahoo concealed the security risks of its network, resulting in substantial loss of

27    private information and money by Plaintiff Essar and the Colorado Class.

28

COMPLAINT FOR GROSS NEGLIGENCE, BAILMENT, STATE CONSUMER PROTECTION AND
DATA BREACH LAWS, AND DECLARATORY RELIEF        - 17 -

104.    Yahoo's concealment of the unsecured nature of its network and inability to safeguard personal information were material to Plaintiff Essar and the Colorado Class.

105.    Yahoo's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Essar, about the true nature of its unsecured network.

106.    Plaintiff Essar and the Colorado Class suffered ascertainable loss and actual damages as a direct and proximate result of Yahoo's misrepresentations and its concealment of and failure to disclose material information.  Plaintiff Essar and the Colorado Class members who created Yahoo accounts and provided their personal information to do so would not have created a Yahoo account at all if the true nature of Yahoo's network had been disclosed.

107.    Yahoo had an ongoing duty to all Yahoo account holders to refrain from unfair and deceptive practices under the Colorado CPA.  All Yahoo account holders in Colorado suffered ascertainable loss in the form of loss of use of their personal information and payment of money for credit and/or identity protection as a result of Yahoo's deceptive and unfair acts and practices made in the course of Yahoo's business.

108.    As a result of Yahoo's violations of the Colorado CPA, Plaintiff Essar and the Colorado Class have suffered injury-in-fact and/or actual damage.

109.    Pursuant to Colo. Rev. Stat. §6-1-113, Plaintiff Essar, individually and on behalf of the Colorado Class, seeks monetary relief against Yahoo in an amount of their actual damages, or (b) statutory damages in the amount of $500 for Plaintiff Essar and each Colorado Class member.

110.    Yahoo's violations present a continuing risk to Plaintiff Essar as well as to the general public.  Yahoo's unlawful acts and practices complained of herein affect the public interest.

111.    Plaintiff Essar also seeks an order enjoining Yahoo's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

**COUNT VI**

**Violation of Maryland Consumer Protection Act**
**Md. Code Com. Law §13-101, *et seq.***

112.    Plaintiff Morris incorporates the above allegations by reference.

COMPLAINT FOR GROSS NEGLIGENCE, BAILMENT, STATE CONSUMER PROTECTION AND
DATA BREACH LAWS, AND DECLARATORY RELIEF
- 18 -

113.    Yahoo, Plaintiff Morris, and the Maryland Class are "persons" within the meaning of Md. Code Com. Law §13-101(h).

114.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer goods or services.  Md. Code Com. Law §13-303.  Yahoo participated in misleading, false, or deceptive acts that violated the Maryland CPA.

115.    In the course of its business, Yahoo concealed and suppressed material facts concerning the adequacy of Yahoo's ability to secure users' personal information.  Plaintiff Morris and Maryland Class members had no way of discerning that Yahoo's representations were false and misleading.  Plaintiff Morris and Maryland Class members did not and could not unravel Yahoo's deception on their own.

116.    Yahoo thus violated the Maryland CPA by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the creation of Yahoo accounts by consumers.

117.    Yahoo engaged in misleading, false, unfair or deceptive acts or practices that violated the Maryland CPA by failing to disclose and actively concealing the inadequate security measures in place to protect personal information provided to Yahoo by users.

118.    Yahoo's actions as set forth above occurred in the conduct of trade or commerce.

119.    Yahoo knew the true nature of its unsecure network when it was hacked several years before 2014.

120.    Yahoo intentionally and knowingly misrepresented material facts regarding its ability to adequately safeguard and secure users' personal information with intent to mislead Plaintiff Morris and the Maryland Class.

121.    Yahoo knew or should have known that its conduct violated the Maryland CPA.

122.    Yahoo owed Plaintiff Morris a duty to disclose security risks of its network because it possessed exclusive knowledge that its network was unsecure and vulnerable to outside hackers.

123.    Yahoo concealed the security risks of its network, resulting in substantial loss of private information and money by Plaintiff Morris and the Maryland Class.

124.    Yahoo's concealment of the unsecured nature of its network and inability to safeguard personal information were material to Plaintiff Morris and the Maryland Class.

125.    Yahoo's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Morris, about the true nature of its unsecured network.

126.    Plaintiff Morris and the Maryland Class suffered ascertainable loss and actual damages as a direct and proximate result of Yahoo's misrepresentations and its concealment of and failure to disclose material information.  Plaintiff Morris and the Maryland Class members who created Yahoo accounts and provided their personal information to do so would not have created a Yahoo account at all if the true nature of Yahoo's network had been disclosed.

127.    Yahoo had an ongoing duty to all Yahoo account holders to refrain from unfair and deceptive practices under the Maryland CPA.  All Yahoo account holders in Maryland suffered ascertainable loss in the form of loss of use of their personal information and payment of money for credit and/or identity protection as a result of Yahoo's deceptive and unfair acts and practices made in the course of Yahoo's business.

128.    As a result of Yahoo's violations of the Maryland CPA, Plaintiff Morris and the Maryland Class have suffered injury-in-fact and/or actual damage.

129.    Pursuant to Md. Code Com. Law §13-408, Plaintiff Morris and the Maryland Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**COUNT VII**

**Violation of Texas Deceptive Trade Practices Act – Consumer Protection Act
Tex. Bus. & Com. Code §17.41, *et seq.***

130.    Plaintiffs Howard and Collier ("Texas Plaintiffs") incorporate the above allegations by reference.

131.    Texas Plaintiffs and the Texas Class are individuals, partnerships or corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25

1   million in assets), *see* Tex. Bus. & Com. Code §17.41, and are therefore "consumers" pursuant to

2   Tex. Bus. & Com. Code §17.45(4).  Yahoo is a "person" within the meaning of Tex. Bus. & Com.

3   Code §17.45(3).

4       132.   Yahoo is engaged in "trade" or "commerce" or "consumer transactions" within the

5   meaning Tex. Bus. & Com. Code §17.46(a).

6       133.   The Texas Deceptive Trade Practices - Consumer Protection Act ("Texas DTPA")

7   prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce,"

8   Tex. Bus. & Com. Code §17.46(a), and an "unconscionable action or course of action," which means

9   "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge,

10  ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code

11  §§17.45(5) and 17.50(a)(3).

12      134.   In the course of its business, Yahoo concealed and suppressed material facts

13  concerning the adequacy of Yahoo's ability to secure users' personal information.  Texas Plaintiffs

14  and the Texas Class members had no way of discerning that Yahoo's representations were false and

15  misleading.  Texas Plaintiffs and the Texas Class members did not and could not unravel Yahoo's

16  deception on their own.

17      135.   Yahoo thus violated the Texas DTPA by, at minimum: employing deception,

18  deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of

19  any material fact with intent that others rely upon such concealment, suppression or omission, in

20  connection with the creation of Yahoo accounts by consumers.

21      136.   Yahoo engaged in misleading, false, unfair or deceptive acts or practices that violated

22  the Texas DTPA by failing to disclose and actively concealing the inadequate security measures in

23  place to protect personal information provided to Yahoo by users.

24      137.   Yahoo's actions as set forth above occurred in the conduct of trade or commerce.

25      138.   Yahoo knew the true nature of its unsecure network when it was hacked several years

26  before 2014.

27

28

COMPLAINT FOR GROSS NEGLIGENCE, BAILMENT, STATE CONSUMER PROTECTION AND
DATA BREACH LAWS, AND DECLARATORY RELIEF        - 21

139.     Yahoo intentionally and knowingly misrepresented material facts regarding its ability to adequately safeguard and secure users' personal information with intent to mislead Texas Plaintiffs and the Texas Class.

140.     Yahoo knew or should have known that its conduct violated the Texas DTPA.

141.     Yahoo owed Texas Plaintiffs a duty to disclose security risks of its network because it possessed exclusive knowledge that its network was unsecure and vulnerable to outside hackers.

142.     Yahoo concealed the security risks of its network, resulting in substantial loss of private information and money by Texas Plaintiffs and the Texas Class.

143.     Yahoo's concealment of the unsecured nature of its network and inability to safeguard personal information were material to Texas Plaintiffs and the Texas Class.

144.     Yahoo's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Texas Plaintiffs, about the true nature of its unsecured network.

145.     Texas Plaintiffs and the Texas Class suffered ascertainable loss and actual damages as a direct and proximate result of Yahoo's misrepresentations and its concealment of and failure to disclose material information Texas Plaintiffs and the Texas Class members who created Yahoo accounts and provided their personal information to do so would not have created a Yahoo account at all if the true nature of Yahoo's network had been disclosed.

146.     Yahoo had an ongoing duty to all Yahoo account holders to refrain from unfair and deceptive practices under the Texas DTPA.  All Yahoo account holders in Texas suffered ascertainable loss in the form of loss of use of their personal information and payment of money for credit and/or identity protection as a result of Yahoo's deceptive and unfair acts and practices made in the course of Yahoo's business.

147.     As a result of Yahoo's violations of the Texas DTPA, Texas Plaintiffs and the Texas Class have suffered injury-in-fact and/or actual damage.

148.     Pursuant to Tex. Bus. & Com. Code §17.50, Texas Plaintiffs and the Texas Class seek an order enjoining Yahoo's unfair and/or deceptive acts or practices, damages, multiple damages for knowing and intentional violations, pursuant to §17.50(b)(1), punitive damages, and attorneys' fees, costs, and any other just and proper relief  available under the Texas DTPA.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# COUNT VIII

**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §17200, *et seq.***

149.     Plaintiffs incorporate the above allegations by reference.

150.     California Business and Professions Code §17200 prohibits any "unlawful, unfair, or fraudulent business act or practices."   Yahoo has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

151.     Yahoo's conduct, as described herein, was and is in violation of the UCL.  Yahoo's conduct violates the UCL in at least the following ways:

(a)      by concealing from Plaintiffs and the other Class members that Yahoo's network was unsecure and could not adequately safeguard their personal, private information;

(b)      by marketing Yahoo by falsely claiming that Yahoo would "limit access to personal information about you to employees who we believe reasonably need to come into contact with that information to provide products or services to you or in order to do their jobs"; and

(c)      by marketing Yahoo by falsely claiming to "have physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about you."

152.     Yahoo's misrepresentations and omissions alleged herein caused Plaintiffs and the other Class members to create accounts with Yahoo.   Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have created Yahoo accounts and provided their sensitive information to Yahoo.

153.     Accordingly, Plaintiffs and the other Class members have suffered injury in fact including lost money or property as a result of Yahoo's misrepresentations and omissions.

154.     Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Yahoo under Cal. Bus. & Prof. Code §17200.

155.     Plaintiffs requests that this Court enter such orders or judgments as may be necessary to enjoin Yahoo from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the Class any money it acquired by unfair competition, including

COMPLAINT FOR GROSS NEGLIGENCE, BAILMENT, STATE CONSUMER PROTECTION AND
DATA BREACH LAWS, AND DECLARATORY RELIEF                                                      - 23

1    restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code §17203 and

2    Cal. Bus. & Prof. Code §3345; and for such other relief set forth below.

3                                         **COUNT IX**

4                          **Violation of California's Customer Records Act**
                             **Cal. Civ. Code §1798.80, *et seq.***
5
        156.    Plaintiff Cote incorporates the above allegations by reference.
6
        157.    Section 1798.82 of the California Civil Code provides, in pertinent part, as follows:
7
        (a) Any person or business that conducts business in California, and that owns or
8       licenses computerized data that includes personal information, shall disclose any
        breach of the security of the system following discovery or notification of the breach
9       in the security of the data to any resident of California whose unencrypted personal
        information was, or is reasonably believed to have been, acquired by an unauthorized
10      person. The disclosure shall be made in the most expedient time possible and without
        unreasonable delay, consistent with the legitimate needs of law enforcement, as
11      provided in subdivision (c), or any measures necessary to determine the scope of the
        breach and restore the reasonable integrity of the data system.
12
        (b) Any person or business that maintains computerized data that includes personal
13      information that the person or business does not own shall notify the owner or
        licensee of the information of any breach of the security of the data immediately
14      following discovery, if the personal information was, or is reasonably believed to
        have been, acquired by an unauthorized person.
15
        (c) The notification required by this section may be delayed if a law enforcement
16      agency determines that the notification will impede a criminal investigation. The
        notification required by this section shall be made after the law enforcement agency
17      determines that it will not compromise the investigation.

18      (d) Any person or business that is required to issue a security breach notification
        pursuant to this section shall meet all of the following requirements:
19
            (1) The security breach notification shall be written in plain language.
20
            (2) The security breach notification shall include, at a minimum, the
21      following information:

22              (A) The name and contact information of the reporting person or
        business subject to this section.
23
                (B) A list of the types of personal information that were or are
24      reasonably believed to have been the subject of a breach.

25              (C) If the information is possible to determine at the time the notice is
        provided, then any of the following: (i) the date of the breach, (ii) the estimated date
26      of the breach, or (iii) the date range within which the breach occurred. The
        notification shall also include the date of the notice.
27

28

COMPLAINT FOR GROSS NEGLIGENCE, BAILMENT, STATE CONSUMER PROTECTION AND
DATA BREACH LAWS, AND DECLARATORY RELIEF                                          - 24 -

1       (D) Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided.

       (E) A general description of the breach incident, if that information is possible to determine at the time the notice is provided.

       (F) The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a social security number or a driver's license or California identification card number.

*     *     *

(f) Any person or business that is required to issue a security breach notification pursuant to this section to more than 500 California residents as a result of a single breach of the security system shall electronically submit a single sample copy of that security breach notification, excluding any personally identifiable information, to the Attorney General.  A single sample copy of a security breach notification shall not be deemed to be within subdivision (f) of Section 6254 of the Government Code.

(g) For purposes of this section, "breach of the security of the system" means unauthorized acquisition of computerized data that compromises the security, confidentiality, or integrity of personal information maintained by the person or business. Good faith acquisition of personal information by an employee or agent of the person or business for the purposes of the person or business is not a breach of the security of the system, provided that the personal information is not used or subject to further unauthorized disclosure.

158.    The Yahoo data breach constituted a "breach of the security system" of Yahoo.

159.    Yahoo unreasonably delayed informing anyone about the breach of security of California Class members' confidential and non-public information after Yahoo knew the data breach had occurred.

160.    Yahoo failed to disclose to California Class members, without unreasonable delay, and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, personal information when it knew or reasonably believed such information had been compromised.

161.    Upon information and belief, no law enforcement agency instructed Yahoo that notification to California Class members would impede investigation.

162.    Pursuant to Section 1798.84 of the California Civil Code:

(a) Any waiver of a provision of this title is contrary to public policy and is void and unenforceable.

(b) Any customer injured by a violation of this title may institute a civil action to recover damages.

COMPLAINT FOR GROSS NEGLIGENCE, BAILMENT, STATE CONSUMER PROTECTION AND
DATA BREACH LAWS, AND DECLARATORY RELIEF        - 25 -

(c) In addition, for a willful, intentional, or reckless violation of Section 1798.83, a customer may recover a civil penalty not to exceed three thousand dollars ($3,000) per violation; otherwise, the customer may recover a civil penalty of up to five hundred dollars ($500) per violation for a violation of Section 1798.83.

\*          \*          \*

(e) Any business that violates, proposes to violate, or has violated this title may be enjoined.

163.    As a result of Yahoo's violation of Cal. Civ. Code §1798.82, California Class members incurred economic damages relating to, *inter alia*, expenses for credit monitoring and identity theft protection.

164.    Plaintiff Cote and the California Class seek all remedies available under Cal. Civ. Code §1798.84, including, but not limited to: (a) damages suffered by California Class members as alleged above; (b) statutory damages for Yahoo's willful, intentional, and/or reckless violation of Cal. Civ. Code §1798.83; and (c) equitable relief.

165.    Plaintiff Cote and the California Class also seek reasonable attorneys' fees and costs under Cal. Civ. Code §1798.84(g).

## COUNT X

### Violation of the New Jersey Consumer Fraud Act
### N.J. Stat. Ann. §56:8-1, *et seq.*

166.    Plainitiff Ciangiulli incorporates the above allegations by reference.

167.    Plaintiff Ciangiulli, the New Jersey Class members and Yahoo are persons under the New Jersey Consumer Fraud Act, N.J. Stat. §56:8-1(d).

168.    Yahoo engaged in "sales" of "merchandise" within the meaning of N.J. Stat. §§56:8-1(c), (e). Yahoo's actions as set forth herein occurred in the conduct of trade or commerce.

169.    The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the

1  subsequent performance of such person as aforesaid, whether or not any person has in fact been

2  misled, deceived or damaged thereby. . . . ."  N.J. Stat. §56:8-2.

3          170.   In the course of its business, Yahoo concealed and suppressed material facts

4  concerning the adequacy of Yahoo's ability to secure users' personal information.  Plaintiff

5  Ciangiulli and New Jersey Class members had no way of discerning that Yahoo's representations

6  were false and misleading.  Plaintiff Ciangiulli and New Jersey Class members did not and could not

7  unravel Yahoo's deception on their own.

8          171.   Yahoo thus violated the New Jersey CFA by, at minimum: employing deception,

9  deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of

10  any material fact with intent that others rely upon such concealment, suppression or omission, in

11  connection with the creation of Yahoo accounts by consumers.

12          172.   Yahoo engaged in misleading, false, unfair or deceptive acts or practices that violated

13  the New Jersey CFA by failing to disclose and actively concealing the inadequate security measures

14  in place to protect personal information provided to Yahoo by users.

15          173.   Yahoo's actions as set forth above occurred in the conduct of trade or commerce.

16          174.   Yahoo knew the true nature of its unsecure network when it was hacked several years

17  before 2014.

18          175.   Yahoo intentionally and knowingly misrepresented material facts regarding its ability

19  to adequately safeguard and secure users' personal information with intent to mislead Plaintiff

20  Ciangiulli and the New Jersey Class.

21          176.   Yahoo knew or should have known that its conduct violated the New Jersey CFA.

22          177.   Yahoo owed Plaintiff Ciangiulli a duty to disclose security risks of its network

23  because it possessed exclusive knowledge that its network was unsecure and vulnerable to outside

24  hackers.

25          178.   Yahoo concealed the security risks of its network, resulting in substantial loss of

26  private information and money by Plaintiff Ciangiulli and the New Jersey Class.

27          179.   Yahoo's concealment of the unsecured nature of its network and inability to

28  safeguard personal information were material to Plaintiff Ciangiulli and the New Jersey Class.

COMPLAINT FOR GROSS NEGLIGENCE, BAILMENT, STATE CONSUMER PROTECTION AND
DATA BREACH LAWS, AND DECLARATORY RELIEF                                        - 27

180.    Yahoo's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Ciangiulli, about the true nature of its unsecured network.

181.    Plaintiff Ciangiulli and the New Jersey Class suffered ascertainable loss and actual damages as a direct and proximate result of Yahoo's misrepresentations and its concealment of and failure to disclose material information Plaintiff Ciangiulli and New Jersey Class members who created Yahoo accounts and provided their personal information to do so would not have created a Yahoo account at all if the true nature of Yahoo's network had been disclosed.

182.    Yahoo had an ongoing duty to all Yahoo account holders to refrain from unfair and deceptive practices under the New Jersey CFA.  All Yahoo account holders in New Jersey suffered ascertainable loss in the form of loss of use of their personal information and payment of money for credit and/or identity protection as a result of Yahoo's deceptive and unfair acts and practices made in the course of Yahoo's business.

183.    As a result of Yahoo's violations of the New Jersey CFA, Plaintiff Ciangiulli and the New Jersey Class have suffered injury-in-fact and/or actual damage.

184.    As a result of the foregoing wrongful conduct of Yahoo Plaintiff Ciangiulli and the New Jersey Class have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, treble damages, an order enjoining Defendant's deceptive and unfair conduct, costs and reasonable attorneys' fees under N.J. Stat. §56:8-19, and all other just and appropriate relief.

### COUNT XI

### Declaratory Relief

185.    Plaintiffs incorporate the above allegations by reference.

186.    There is an active case and controversy among Plaintiffs on the one hand, and Yahoo on the other.

187.    Pursuant to 28 U.S.C. §2201, Plaintiffs seek a declaration as to the following:

(a)    That, to the extent Plaintiffs' claims herein are covered by Yahoo's Terms of Service, Section 20 of Yahoo's Terms of Service, purporting to limit Yahoo's liability for, *inter alia*,

1    "unauthorized access to . . . your data," is unenforceable because it is against public policy and both

2    procedurally and substantive unconscionable; and

3            (b)    That, to the extent Plaintiffs' claims herein are covered by Yahoo's Terms of

4    Service, Section 20 of Yahoo's Terms of Service is unenforceable because it violates Cal. Civ. Code

5    §1668 and/or Cal. Com. Code §2719.

6        188.    Plaintiffs are in doubt as to whether Yahoo's Terms of Service apply to their claims

7    and whether, if so, the limitation of liability clause therein is lawful and enforceable under California

8    law.

9        189.    There is a bona fide dispute between the parties hereto, and Plaintiffs have and do

10    raise justiciable issues as to the existence or non-existence of his rights, powers, obligations, and

11    legal relations with Yahoo by virtue of the Terms of Service, this complaint, and the applicable

12    statutes and rules of this state.

13        190.    Plaintiffs are in doubt as to their rights, powers, obligations, and legal relations and

14    there is an actual and present need for a declaratory judgment as to the issues set forth herein.

15                                **PRAYER FOR RELIEF**

16        WHEREFORE, Plaintiffs Howard, Essar, Collier,  Ciangiulli, and Morris, on behalf of

17    themselves and the Class and state law classes, respectfully request that this Court enter an Order:

18        A.    Certifying this case as a class action on behalf of the Class defined above, appointing

19    Plaintiffs as representatives of the Class, and appointing their counsel as Class Counsel;

20        B.    Awarding damages, including, but not limited to, compensatory, statutory, and

21    punitive damages, to Plaintiffs and Class members in an amount to be determined at trial;

22        C.    Awarding injunctive and other equitable relief as is necessary to protect the interests

23    of the Class;

24        D.    Declaring unenforceable Section 20 of Yahoo's Terms of Service;

25        E.    Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys'

26    fees;

27        F.    Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent

28    allowable; and

COMPLAINT FOR GROSS NEGLIGENCE, BAILMENT, STATE CONSUMER PROTECTION AND
DATA BREACH LAWS, AND DECLARATORY RELIEF                                    - 29 -

G.      Awarding such other and further relief as equity and justice may require.

**JURY TRIAL**

Plaintiffs demand a trial by jury for all issues so triable.

DATED:  October 3, 2016                     ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            SHAWN A. WILLIAMS


                                            _s/ Shawn A. Williams_
                                            SHAWN A. WILLIAMS

                                            Post Montgomery Center
                                            One Montgomery Street, Suite 1800
                                            San Francisco, CA  94104
                                            Telephone:  415/288-4545
                                            415/288-4534 (fax)

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            PAUL J. GELLER
                                            STUART A. DAVIDSON
                                            JASON H. ALPERSTEIN
                                            120 East Palmetto Park Road, Suite 500
                                            Boca Raton, FL  33432
                                            Telephone:  561/750-3000
                                            561/750-3364 (fax)

                                            LABATON SUCHAROW LLP
                                            JOEL H. BERNSTEIN
                                            CORBAN S. RHODES
                                            ROSS M. KAMHI
                                            140 Broadway, 34th Floor
                                            New York, NY  10005
                                            Telephone:  212/907-0700
                                            212/818-0477 (fax)

                                            _Attorneys for Plaintiffs_

I:\Admin\CptDraft\Other\Cpt Yahoo! Data Breach_Howard.docx

COMPLAINT FOR GROSS NEGLIGENCE, BAILMENT, STATE CONSUMER PROTECTION AND
DATA BREACH LAWS, AND DECLARATORY RELIEF                                    - 30 -